UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALEX MALAVE,<br> Petitioner, | :<br>:<br>: |
| v. | : Civil Action No. 3:01 CV 212 (CFD)<br>: |
| GIOVANNY GOMEZ, et al.,<br> Respondents. | :<br>: |

## RULING ON PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS

  Petitioner Alex Malave was convicted after a jury trial in the Connecticut Superior Court of two counts of assault in the first degree, in violation of Conn. Gen. Stat. § 53a-59(a)(1). He is currently serving a 28-year sentence of imprisonment for those convictions at the MacDougall-Walker Correctional Institution in Suffield, Connecticut.[1] After exhausting his appeal rights in the Connecticut state courts, Malave filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. He claims that his conviction and incarceration were unconstitutional and were obtained in violation of his right to due process under the Fourteenth Amendment.

  For the reasons discussed below, petitioner's application for a writ of habeas corpus is denied.

---

[1] Malave was sentenced to a term of 18 years' imprisonment on the first assault count, and to a consecutive ten-year term of imprisonment on the second count.

I.  Background[2]

On the evening of June 12, 1994, Jose Garcia dropped off his brother Oswaldo Garcia at the Latin American Club in Meriden, Connecticut.  Oswaldo carried a hunting knife in a sheath attached to his pants.  Also present at the Latin American Club that night, among others, were Alex Malave; Malave's girlfriend, Maria Castro; and Malave's friends Domingo Garcia, Isabell Vargas, and Cindy Castro.[3]

Oswaldo Garcia left the Latin American Club in the early morning hours of June 13.  In the parking lot outside, he began to fight with another group of club patrons.  Having returned to the Latin American Club to pick up his brother, Jose Garcia also became embroiled in the fight.  At one point, Oswaldo's knife fell from its sheath; an assailant picked it up and stabbed Oswaldo several times in his side.  The same assailant threw a beer bottle at Oswaldo's head but missed him.  As the Garcia brothers drove away from the fight scene, someone threw Oswaldo's knife at their backs, hitting Jose Garcia in the left shoulder.  Oswaldo pulled the knife from his brother's shoulder, and discarded it out the car window.  Jose then drove to a nearby hospital, where the brothers were treated for their injuries.  Both Jose and Oswaldo were interviewed by police at the hospital.  Oswaldo identified Alex Malave by name as his assailant, and later corroborated this identification by selecting Malave's photograph from a police photo array.  During a separate police interview, Jose Garcia also selected Malave's photograph from a photo array as the man who had stabbed both brothers.  Malave then was arrested for assaulting Jose and Oswaldo

---

[2] The following facts are taken from the previous Connecticut appellate court opinions in this matter.  See State v. Malave, 707 A.2d 307, 47 Conn. App. 597 (1998); State v. Malave, 737 A.2d 242, 250 Conn. 722 (1999).  They are undisputed unless otherwise noted.

[3] Maria and Cindy Castro are unrelated.

Garcia with the knife.

At trial, Malave presented an alibi defense, claiming that he was playing pool inside the Latin American Club at the time of the fight and stabbed neither Oswaldo nor Jose Garcia. Malave then called three of the four persons who had accompanied him to the Latin American Club that night as alibi witnesses: Domingo Garcia, Isabel Vargas, and Maria Castro.[4]  Malave did not call Cindy Castro to the stand, although Maria Castro testified that she and Cindy Castro currently were roommates. Malave's last witness was Carmen Delvalle, an investigator for the public defender's office. Delvalle testified that she had made several phone calls, but had been unable to locate Cindy Castro and therefore Delvalle did not serve her with a subpoena. Both Oswaldo and Jose Garcia then testified for the prosecution, as did two Meriden police officers. No physical or forensic evidence was presented.

After closing arguments, the prosecution requested that the trial judge include a "missing witness" charge as part of the jury instructions, specifically relating to Malave's failure to call Cindy Castro.[5]  The trial judge granted that request, and included the following instruction in the jury charge:

> In final argument, [the prosecutor] asked you to infer from the fact that the defendant did not bring Cindy Castro into court that if she did testify her testimony would have been unfavorable to the defendant. Under our law, if a party to a case has failed to call to the stand a witness who is within his power to produce, and who naturally would have been produced by him, you may infer that

---

[4] Domingo Garcia identified himself at trial as "Domingo Raphael Garcia," using both his maternal and paternal surnames. Due to his double surname, he was subsequently named in some court papers as "Domingo Raphael." For continuity's sake, this Court will refer to him as Domingo Garcia.

[5] In Connecticut state courts, a missing witness charge is also called a "Secondino charge," from the case establishing the permissibility of such an instruction, Secondino v. New Haven Gas Co., 165 A.2d 598, 147 Conn. 672 (1960)

3

>the testimony of the witness would have been unfavorable to the party failing to call her, and consider that fact in arriving at your decision. You may draw such an inference, but you are not required to draw such an inference. You may draw such an inference only if you determine it is a reasonable and logical inference to be drawn.
>
>In order to make this inference in this case, you must first find that it is more probable than not that Cindy Castro is available; and second, that she is a witness whom the defendant would naturally produce. Whether the witness is available is a question of fact for you to determine, before you draw an inference adverse from her absence.
>
>Availability may be determined not only from mere physical presence, but also from the usefulness or nature of the expected testimony. Also relevant is whether the witness is in such a relationship with the defendant that it is likely that her presence could be procured. A witness who would naturally be produced by a party is one who is known to that party, and by reason of her relationship to that party or the issues in the case or both, could reasonably be expected to have peculiar or superior information relevant to the case which, if favorable, the party would have produced. As with the question of availability, it is for you to determine from the evidence presented whether the absent witness's testimony would be relevant to the case, before you draw any adverse inference.
>
>A party's failure to call as a witness a person who is available, but does not stand in such a relationship to the party or the issues so that the party would naturally be expected to produce her if her testimony were favorable, is not a basis for an unfavorable inference.

Malave, 250 Conn. at 726-27.

Malave timely objected to the missing witness instruction as unconstitutional, and was overruled. After his conviction, Malave appealed to the Connecticut Appellate Court on several grounds, including the propriety of the Secondino charge. See State v. Malave, 707 A.2d 307, 47 Conn. App. 597 (1998). The Appellate Court affirmed Malave's conviction. Id. at 314, 612. Malave then appealed to the Connecticut Supreme Court, which granted certification to appeal on a single issue: "As a matter of policy, should the adverse witness rule of Secondino v. New Haven Gas Co., be abandoned[?]" State v. Malave, 713 A.2d 832, 244 Conn. 913 (1998).

Upon review, the Connecticut Supreme Court agreed that in criminal cases "the continued use of the Secondino charge is unwarranted." State v. Malave, 737 A.2d 242, 250 Conn. 722, 728 (1999). The Supreme Court concluded that modern discovery procedures largely had obviated the need for missing witness instructions, as now witnesses are equally available to both sides. See id. at 730-733. Furthermore, the court felt that "the missing witness rule is predicated upon the questionable assumption that a party's failure to call a particular witness is due to the fact that the witness' testimony would be adverse to that party." Id. at 734. Finally, having to call all available witnesses in order to avoid a Secondino instruction could needlessly extend trials and waste judicial resources. Id. at 734-37. For those reasons, the instruction was no longer useful and should be abandoned.

The Connecticut Supreme Court specifically denied Malave's claim, however, that a missing witness instruction was unconstitutional. While noting that a Secondino instruction in a criminal matter "gives rise to constitutional issues not present in civil cases" and that some courts have concluded that the instruction "unconstitutionally diminishes the state's burden of proving a defendant's guilt beyond a reasonable doubt by suggesting to the jury that the defendant has some obligation to produce evidence," the Connecticut court declined to adopt a similar holding. Id. at 737. It emphasized: "[W]e see no persuasive reason to reconsider our holding that 'the giving of a Secondino charge is purely an evidentiary issue and is not a matter of constitutional dimensions.'" Id. at 738 (quoting State v. Anderson, 561 A.2d 897, 212 Conn. 31, 41-42 (1989)).

The Connecticut Supreme Court then denied Malave's request for a new trial, finding that since the Secondino charge did not abridge Malave's constitutional rights, Malave could not make a sufficient showing of harm based on the instruction alone. The state's evidence against

5

Malave was strong, and Malave's other witnesses had provided detailed testimony about his alibi defense:

> In these circumstances, we perceive no reasonable likelihood that the trial court's Secondino instruction harmed the defendant. . . . The jury obviously credited the eyewitness testimony of the two victims and rejected the testimony of the defendant and his three alibi witnesses. The defendant has not demonstrated that the jury's evaluation of that evidence would have been different had the court not given the Secondino instruction.

Id. at 743.

Malave petitioned for certiorari to the United States Supreme Court, which was denied. See State v. Malave, 528 U.S. 1170 (2000). He then filed his application for a writ of habeas corpus in this Court.

## II.    Standard of Review

Because Malave filed his habeas petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court must review his claim under that statute's deferential standard. AEDPA dictates that when a habeas petitioner's claim has been adjudicated on the merits in state court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court decision is considered "contrary to" Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [the Court's] cases, or if it confronts a set of

facts that is materially indistinguishable from a decision of the Court but reaches a different result." Brown v. Payton, 125 S. Ct. 1432, 1438 (2005). A state court decision constitutes an "unreasonable application" of federal law if the decision applies Supreme Court precedent "to the facts in an objectively unreasonable manner." Id. at 1434. The Supreme Court has cautioned, however, that "state-court decisions that do not 'conflict' with federal law will rarely be 'unreasonable' . . . state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams v. Taylor, 529 U.S. 362, 389 (2000).

**III.    Discussion**

Malave contends that an instruction permitting a jury to draw an irrational inference against a criminal defendant violates due process, and is contrary to the Supreme Court precedents of Ulster County Court v. Allen, 442 U.S. 140 (1979), and Tot v. United States, 319 U.S. 463 (1943). Malave argues that because the Secondino instruction in his case permitted such an irrational inference, his trial and conviction violated the Fourteenth Amendment. Malave further argues that the Connecticut Supreme Court's misapplication of federal law makes him eligible for habeas relief under AEDPA.

This Court does not agree with Malave that the Connecticut Supreme Court's decision contradicted governing law as set forth in either Ulster County or Tot. Tot, the earlier case, challenged a provision of the Federal Firearms Act. That Act prohibited fugitives and persons convicted of crimes of violence from possessing firearms that had moved in interstate commerce, and declared that "the possession of a firearm or ammunition by any such person shall be

presumptive evidence that such firearm or ammunition was shipped or transported or received . . . by such person in violation of this Act." Tot, 319 U.S. at 464 (quoting 15 U.S.C. § 902(f)). The Supreme Court invalidated that section of the Act, holding that the due process clauses of the Fifth and Fourteenth Amendments place certain limits on what constitutes "sufficient evidence of the ultimate fact on which guilt is predicated." Id. at 467. The statutory presumption in the Firearms Act violated due process because there was an insufficient "rational connection between the fact proved and the ultimate fact presumed." Id. The Tot Court also intimated, however, that a permissive inference that did not subject a defendant to excessive "unfairness or hardship" did not rise to the level of a due process violation. See id. at 469-70.

In Ulster County, the respondents' automobile was stopped for speeding, and two loaded handguns were found in the front passenger area of the car. The respondents—the car's driver and two rear passengers— then were tried in New York state court on firearms possession charges. At trial, they objected to the introduction of the firearms into evidence, claiming that the prosecution had not demonstrated an adequate connection between the defendants and the guns. The trial judge overruled the objection, relying on a New York statute stating that "the presence of a firearm in an automobile is presumptive evidence of its illegal possession by all persons then occupying the vehicle." Ulster County, 442 U.S. at 142.[6] The final jury charge also included an instruction that the jury was permitted to infer possession from the defendants' presence in the car. The respondents later filed a federal habeas corpus petition in the Southern District of New York, claiming that the jury instruction violated their rights to due process. Id. at 145-46.

---

[6] There were certain limited exceptions to that statute's presumption, none of which were implicated in the United States Supreme Court's review of the statute. See id.

The United States Supreme Court disagreed that the application of the presumption in the respondents' case was unconstitutional, finding that the permissive inference did not violate due process because the other evidence presented at trial provided a rational basis from which the jury could infer possession. Id. at 164-65. The Ulster County Court also stated more generally that permissive inferences in criminal cases were constitutionally valid so long as they did "not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." Id. at 156. The beyond-a-reasonable-doubt standard only was undermined when

> there [was] *no* rational way the trier could make the connection permitted by the inference. . . . [O]nly in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

Id. at 157 (emphasis added). The Court reiterated that "as long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt," it need only satisfy the Tot test of having a rational connection to the facts presented in order to be constitutionally valid. Id. at 167.

Tot and Ulster County do not prohibit permissive inferences to be drawn by juries. Indeed, both cases suggest that a permissive inference is constitutionally acceptable, save in situations where there is no rational basis for the jury to make such an inference or when there exists no other factual basis for the jury's guilty verdict. Malave's case does not qualify for these limited exceptions set forth in the case law: the inference at issue here was permissive and not mandatory, the Secondino charge given to the jury did not implicate the ultimate facts necessary to find Malave guilty, and there was no paucity of other evidence upon which the jury could have based its verdict. Indeed, the Connecticut Supreme Court found that "the evidence presented by

the state against [Malave] was strong" and that because Malave "elicited such extensive testimony in support of his alibi defense, there [was] a reasonable basis to presume that the jury attributed the defendant's failure to produce Cindy Castro . . . [simply] to her unavailability or to the fact that her testimony would have been cumulative . . . ." Malave, 250 Conn. at 741, 742.

Moreover, the Court notes that missing witness instructions have been upheld by other federal appeals courts. See, e,g., United States v. Spinosa, 982 F.2d 620, 632 (1st Cir. 1992); United States v. Pitts, 918 F.2d 197, 199-201 (D.C. Cir. 1990); United States v. Cook, 771 F.2d 378, 382-83 (8th Cir. 1985). The Second Circuit has endorsed such an instruction in several recent cases. See United States v. Caccia, 122 F.3d 136, 138-40 (2d Cir. 1997) (stating also that "the giving of missing witness instructions is generally a matter left to the discretion of the trial judge"); United States v. Myerson, 18 F.3d 153, 158 (2d Cir. 1994).

For the above reasons, the Court finds that the Connecticut Supreme Court's decision was not contrary to, nor involved an unreasonable application of, Supreme Court precedent. Neither was the decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See Miller-El v. Cockrell, 537 U.S. 322, 340 ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary."). This Court's application of the AEDPA criteria therefore precludes Malave from receiving habeas relief.

IV.  **Conclusion**

The petitioner's Application for a Writ of Habeas Corpus [Doc. # 1] is DENIED. No certificate of appealability will issue, as there has been no "substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2).  The Clerk is directed to close this case.

So ordered this __15th__ day of July 2005 at Hartford, Connecticut.

                                                /s/ CFD
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**